**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VOLVO FINANCIAL SERVICES, A DIVISON OF VFS US LLC,<br><br>Plaintiff,<br><br>v.<br><br>HARVEER HUNDAL, et al.<br><br>Defendants. | Case No. 1:19-cv-00455-DAD-EPG<br><br>FINDINGS AND RECOMMENDATIONS RECOMMEDING THAT PLAINTIFF'S MOTION FOR A DEFAULT JUDGMENT, AS MODIFIED, BE GRANTED<br><br>(ECF Nos. 10, 21) |

On April 9, 2019, Plaintiff Volvo Financial Services ("Volvo") filed this suit against Defendant Harveer Hundal ("Defendant"), alleging various causes of action arising from the alleged breach of four Credit Sales Contracts and Security Agreements. (ECF No. 1.) Defendant has not responded to Volvo's Complaint to date. On September 27, 2019, Volvo filed a motion for entry of default judgment against Defendant pursuant to Federal Rule of Civil Procedure 55(b)(1) in the amount $456,898.10, consisting of deficiency balances under four loan agreements in the sum of $318,279.22 and contractual default interest in the sum of $112,388.94. (ECF No. 10, p. 1-2).[1]

On November 1, 2019, the Court held a hearing on the motion for default judgment.

---

[1] To the extent Volvo's motion previously requested an order of possession of collateral #3, Volvo has since informed the Court it is not currently seeking such order (ECF No. 21).

1

Volvo's counsel attended telephonically; Defendant did not appear. Volvo provided additional briefing to answer the Court's questions on November 8, 2019. (ECF No. 17.)

For the reasons set forth below, the Court recommends that Volvo's motion for default judgment be granted.

## I.     BACKGROUND AND EVIDENCE IN SUPPORT OF DEFAULT JUDGMENT

This case concerns four breached Credit Sales Contract and Security Agreements.[2] Based on the Court's review, the agreements follow a standard form. *See* ECF Nos. 10-2, 10-7, 10-12, and 10-16. Each time, Defendant purchased equipment from Central Valley GMC. *See, e.g.* ECF No. 10-2, at 2. Defendant did not pay for the equipment in full at the outset; rather, he agreed to pay a specified monthly amount over 60 months at an increased price and granted a security interest to the dealer. *See, e.g., id.* at 2-3. Among other things, he represented and warranted that "the Equipment is to be used only for business purposes[.]"[3] (*Id.* at 3.)

Failing to pay any installments on time is an event of default under the contracts. (*Id.* at 4.) At that time, the dealer (which assigned its rights in each of the contracts to Volvo, *see e.g.* ECF Nos. 10-2, at 3 and 10-3, at 2) had the right to declare all amounts due and payable, repossess the secured equipment, sell it, and charge an 18% default interest rate. (*Id.* at 3-4). Although Volvo had a security interest in the vehicle, it appears Defendant was the owner, as confirmed by the one title Volvo filed. (ECF No. 10-15.) Each contract chooses North Carolina for its governing law. (ECF No. 10-2, at 4.)

The first contract was dated May 22, 2013. Defendant purchased a 2015 CIMC Cool Globe R800, which is a type of trailer, and a 2014 Thermo King S600 Precedent attachment. (ECF No. 10-2, at 2.) The initial total amount due was $78,616,20. The contract was modified on April 4, 2017, to alter the payment plans. (ECF No. 10-2, at 6.) Nevertheless, Defendant did not pay amounts due under the agreement on June 6, 2017, causing an event of default. (ECF No. 10-1 ¶4.) Volvo repossessed and sold the collateral for $22,500. (ECF No. 10-1 ¶¶ 8-9.) After sale

---

[2] Because Defendant defaulted, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). One of Volvo's employees attested to the damages calculations and provided supporting documents. (ECF Nos. 10-1 – 10-21.) The Court has reviewed these documents and is satisfied with Volvo's calculations.

[3] The Court finds that this clause is a covenant, not a representation and warranty.

2

costs, the amount left owing on the first contract is $15,171.75, plus default interest. (ECF No. 10-1 ¶ 10). The accrued interest at an 18% default rate through September 30, 2019[4] is $3,213.92. (ECF No. 10-1 ¶ 11.)

The second contract, dated June 5, 2015, was for a 2016 Volvo VNL64T-670, which is a sleeper truck. The total amount due over 60 months was $173,038.20. (ECF No. 10-7, at 2.) This contract was also modified on April 4, 2017. (*Id.* at 6.) Defendant defaulted on May 20, 2017, and Volvo repossessed and sold the truck for $47,000. The remaining balance is $64,088.68 plus default interest, which, through September 30, 2019, equaled $18,230.76. (ECF No. 10-1 ¶¶ 14, 19-20.)

The third contract, dated November 30, 2015, was for another 2016 Volvo VNL64T-670, for a total amount of $174,696.60. (ECF No. 10-12, at 2.) Again, the contract was modified on April 4, 2017. (*Id.* at 6.) Defendant failed to pay on May 14, 2017, and the amount due is $143,081.52, plus $62,168.26 in default interest through September 30, 2019. (ECF No 10-1 ¶¶ 24, 28, 31.) Volvo has been unable to repossess the vehicle. (*Id.* ¶ 30.)

The final contract, dated March 3, 2016, was for yet another 2016 Volvo VNL64T-670, for a total amount of $174,739.20. (ECF No. 10-16, at 2.) Like the others, this contract was also modified on April 4, 2017. (*Id.* at 6.) Defendant failed to pay on May 18, 2017. (ECF No. 10-1 ¶ 34.) Volvo repossessed the vehicle and sold it for $35,009. (*Id.* ¶¶ 38-39.) The amount due under the contract is $95,937.27. (*Id.* ¶ 40.) Through September 30, 2019, the default interest at 18% was $28,776. (*Id.* ¶¶ 40-41.)

## II.  LEGAL STANDARDS FOR DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55(b) permits a court to enter default judgment following a defendant's default. *Boards of Trustees v. Energy Management*, 2012 WL 1657523 at *1 (N.D. Cal. 2012) (citation omitted). Rule 55 specifically provides that:

> (a)  Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
> (b)  Entering a Default Judgment

---

[4] This is the date Volvo used to calculate the default interest owed in its affidavit in support of its motion for default judgment. (ECF No. 10-2 ¶¶ 11, 21, 31, 41.)

3

> (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
> (2) By the Court. In all other cases, the party must apply to the court for a default judgement. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared personally or by a representative, that person or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
> (A) Conduct an accounting;
> (B) Determine the amount of damages;
> (C) Establish the truth of any allegation by evidence; or
> (D) Investigate any other matter.

Whether to enter a default judgment lies within the court's discretion. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit has enumerated the following factors (collectively, the *Eitel* factors) that a court may consider in determining whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

As stated above, "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys.*, 826 F.2d at 917–18 (9th Cir. 1987). Therefore, the plaintiff is required to provide proof of all damages sought in the complaint.

Finally, before awarding a default judgment against a defendant, the court must determine the adequacy of service of process, as well as the court's jurisdiction over the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."); *Kaldawi v. Kuwait*, 709 F. App'x 452, 453 (9th Cir. 2017) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look

4

into its jurisdiction over both the subject matter and the parties.").

### III. ANALYSIS

#### A. Service of Process and Jurisdiction

The Court finds that service of process on Defendant was adequate here. Specifically, Volvo served Defendant by leaving copies of summons, complaint, civil cover sheet, Defendant's corporate disclosure statement, order setting mandatory scheduling conference, standing order, notice of availability of magistrate judge to exercise jurisdiction and appeal instructions, and notice of availability of voluntary dispute resolution procedure at Defendant's place of abode with a person authorized to accept service of process under Federal Rule of Civil Procedure 4. *See* (ECF No. 5.); Fed. R. Civ. P. 4(e)(2)(B) ("Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by…leaving a copy of [the complaint and summons] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides here.").

As for jurisdiction, the Court finds it has jurisdiction over the subject matter and parties here. Specifically, Volvo alleges that it is a limited liability company whose sole member is a Delaware corporation and whose principal business office is in North Carolina. Volvo also alleges that Defendant is a resident of Fresno, California. Because the amount in controversy, without interests and costs, exceeds $75,000, diversity jurisdiction is present. *See* 28 U.S.C.A. § 1332 (proving federal jurisdiction in suit between citizens of different states where the amount in controversy, exclusive of interests and costs, exceeds $75,000).

#### B. Application of the *Eitel* Factors

##### 1. Volvo will be prejudiced without a default judgment.

The Court finds that Volvo will be prejudiced without a default judgment. Volvo filed this lawsuit on April 9, 2019. Without a default judgment, Volvo will have no effective relief, as it appears that Defendants will not appear to defend this action despite adequate service. Accordingly, this *Eitel* factor weighs in favor of a default judgment.

##### 2. Volvo's substantive claims are meritorious, and its complaint is sufficient.

The Court will address the second and third *Eitel* factors together because they both

5

"address the merits and sufficiency of the claims pled in the complaint." *Topete v. Ramos Furniture*, No. 1:16-cv-271-DAD-EPG, 2018 WL 4006556, at *5 (E.D. Cal. Aug. 20, 2018), *report and recommendation adopted*, 2018 WL 6615107 (E.D. Cal. Nov. 16, 2018) (quoting *Lyon v. Bergstrom Law, Ltd.*, No. 1:16-cv-401-DAD-SKO, 2017 WL 2350447, at *3 (E.D. Cal. May 31, 2017)) (addressing the factors together).

Volvo has adequately alleged that Defendant breached four different contracts by failing to pay amounts when due. (ECF No. 1 ¶¶ 8-16, 23-31, 38-45, 58-66.) Hence, the second and third *Eitel* factors favor a default judgment.

3. The sum of money at stake is large, and so is the seriousness of Defendant's conduct.

The fourth factor considers "the amount of money at stake in relation to the seriousness of [the defendant's] conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d at 1176-77. "This requires the court [to] assess whether the recovery sought is proportional to the harm caused by [the] defendant's conduct." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010) (citing *Walters v. Statewide Concrete Barrier, Inc.*, No. C 04–2559-JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006)). "Default judgment is disfavored when a large sum of money is involved." *See Moore v. Cisneros*, No. 1:12–cv–00188–LJO–SKO, 2012 WL 6523017, at *4 (E.D. Cal. Dec. 12, 2013) (citation omitted); *see also BR North 223, LLC v. Glieberman*, No. 1:10–cv–02153 LJO–BAM, 2012 WL 639500, at *5 (E.D. Cal. Feb. 27, 2012) ("In general, the fact that a large sum of money is at stake is a factor disfavoring default judgment." (citations omitted)). "The Court considers [a plaintiff's] declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *HICA Educ. Loan Corp. v. Warne*, No. 11–CV–04287–LHK, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012) (citation omitted).

Here, Volvo seeks $456,898.10 against an individual. That substantial sum of money is proportional to the harm caused: $318,279.22 plus interest. Thus, this factor weighs in favor of a default judgment.

4. The possibility of a dispute concerning material facts

No genuine issue of material fact is likely to exist because the allegations in the complaint

6

are taken as true, *Televideo Sys.*, 826 F.2d at 917-18, and Defendants have submitted nothing to contradict the well-pled allegations. Accordingly, this factor favors entry of default judgment.

       5.   Whether the default was due to excusable neglect

Defendants have failed to file a responsive pleading or oppose the Motion for Default Judgment. There is no evidence that Defendants' failure to participate in the litigation is due to excusable neglect. Thus, this factor weighs in favor of granting default judgment.

       6.   The strong policy underlying the federal rules of civil procedure favoring decisions on the merits

This factor inherently weighs strongly against awarding default judgment in every case. In the aggregate, however, this factor is outweighed when compared with the other applicable factors that weigh in favor of granting default judgment.

In summary, six of the seven factors weigh in favor of default judgment. In the aggregate, the factor favoring decisions on the merits is outweighed when compared with the other factors, which weigh in favor of granting default judgment. Accordingly, the *Eitel* factors weigh in favor of entering default judgment.

**C. Terms of Judgment**

On a motion for a default judgment, the relief sought may not be different in kind from, or exceed in amount, what is demanded in the complaint. Fed. R. Civ. P. 54(c). Furthermore, a plaintiff is required to prove all damages sought in the complaint. *See TeleVideo Sys., Inc.*, 826 F.2d at 917–18. "[A] default judgment must be supported by specific allegations as to the exact amount of damages asked for in the complaint." *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). A court looks to plaintiff's "declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *United States v. Yermian*, Case No. SACV 15–0820–DOC (RAOx), 2016 WL 1399519, at *3 (C.D. Cal. Mar. 18, 2016) (internal citations omitted). If the facts necessary to determine the damages are not contained in the complaint, or are legally insufficient, they will not be established by default. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir.1992).

Volvo, both now and in its Complaint, sought the unpaid balance of the amount due on the contracts and a default interest rate of 18% from the date each contract defaulted through the date

of judgment. (ECF Nos. 1, at 11-13; 10-1 ¶ 45.) Volvo also seeks post-judgment interest. The Court will address these sequentially.

### 1. Defendant's unpaid balance is collectable.

The unpaid balance in the Complaint for each breached contract equals the amount set forth in affidavit for a default judgment. *Compare* ECF No. 1, at 11-13 *with* ECF No. 10-1 ¶¶ 10, 20, 28, 40. Thus, the Court will recommend the default judgment against Defendant include the unpaid balance of the four contracts: $318,279.22.

### 2. Volvo is entitled to default interest.

The contracts provide that "upon the occurrence of an Event of Default, the entire unpaid balance of the Total obligation, will bear interest at the rate of 18% per annum or such lesser rate as required under applicable law." *See, e.g.* ECF No. 10-2, at 3. Other courts have enforced this provision. *See, e.g., Volvo Fin. Servs*. v. Freightport, Inc., No. 17-CV-10401-MGM, 2017 WL 7049168 (D. Mass. Dec. 27, 2017), *report and recommendation adopted*, 2018 WL 547539 (D. Mass. Jan. 23, 2018); *VFS U.S. LLC v. J & F Excavating, Inc.*, No. 3:10-00810, 2011 WL 703550, at *6 (M.D. Tenn. Feb. 17, 2011). Therefore, the Court determines that Volvo is entitled to its default interest.[5]

### 3. Post-judgment Interest.

"Under 28 U.S.C. § 1961, the award of post judgment interest on a district court judgment

---

[5] At the hearing, the Court pressed counsel for Plaintiff as to whether the 18% interest rate was permissible in light of the general doctrine that contract damages approximate the damage caused, rather than impose a penalty on the breaching party. Plaintiff submitted a response to this issue on November 8, 2019, (ECF No. 17), citing to North Carolina's Retail Installment Sales Act, which provides in relevant part a seller in a consumer credit installment sales contract may receive a finance charge not exceeding "eighteen percent (18%) per annum where the amount financed is three thousand dollars ($3,000) or greater[.]" N.C.G.S.A. § 25A-15(b)(4)  The Court is not convinced that this Act is applicable because the transactions exceed $75,000. *See id.* § 25A-2(a)(5) (defining "consumer credit sale" to includes sales only when "[t]he amount financed does not exceed seventy-five thousand dollars ($75,000)"). Nevertheless, this appears to be a non-issue in that default interest rates do not appear to be generally subject to liquidated damages limits, *see In re: Family Pharmacy, Inc*., No. 19-6025, 2020 WL 1291112, at *4 (B.A.P. 8th Cir. Mar. 19, 2020) (discussing difference between default interest and liquidated damages), and usury laws do not apply to conditional sales contracts, *North Carolina ex rel. Cooper v. NCCS Loans, Inc.*, 624 S.E.2d 371, 374 (N.C. 2005) ("However, usury laws apply to loans, not to sales. If there is a bona fide purchase of property as opposed to a subterfuge to conceal a loan at a usurious rate, then usury laws have no application whatsoever, even though the sale is made at an exorbitant price." (citation omitted)); *Mich. Nat. Bank v. Hanner*, 151 S.E.2d 579, 579, 581-82 (N.C. 1966) (finding sale of aircraft undertaken like contracts here a conditional sales contract and not a loan, thus outside of North Carolina's usury law).
  Although the Court's research is not exhaustive, in light of the language of the contracts, enforcement of the contracts by other courts, the default of the Defendant, and the law cited above, the Court is satisfied that Plaintiff has met its burden of justifying application of this interest rate in its default judgment.

is mandatory." *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013). Volvo is therefore entitled to it.

## IV. CONCLUSION

For the reasons discussed above, the Court RECOMMENDS that:

1. Plaintiff's Motion for Default Judgment (ECF No. 10) in favor of Plaintiff and against Defendant be GRANTED IN PART AND DENIED IN PART as specified below;

2. Plaintiff be AWARDED damages as specified below:
   a. $318,279.22 in contractual damages;
   b. $112,388.94 in default interest through September 30, 2019; and
   c. additional prejudgment default interest for the time while this judgment is pending at a rate of 18% per annum;[6] and

3. Plaintiff be AWARDED post-judgment interest accruing at the legal rate.[7]

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B). Within fourteen (14) days of service of these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).

\\\
\\\
\\\

---

[6] This amount can be calculated by multiplying the amount of interest that accrues per day by the number of days between October 1, 2019 and the date of judgment. The per diem rate is $318,279.22 * 18% per year / 360 days per year = $159.13961 per day. As an illustration, if the date of judgment April 15, 2020, date of this Findings and Recommendations, 198 days have passed. Thus, the Court would recommend adding $159.13961 * 198 = $31,509.64 to the judgment.

[7] Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges. *See* 28 U.S.C. § 1961(a).

The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler,* 772 F. 3d 834, 839 (9th Cir. 2014); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **April 14, 2020**                    /s/ *Erica P. Grosjean*
                                                                  UNITED STATES MAGISTRATE JUDGE